**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re:

114 TENTH AVENUE ASSOC., INC.,

                              Debtor.

------------------------------------------------------------x

Chapter 11

Case No. 05-60099 (ALG)

**ORDER ON APPLICATION FOR ATTORNEY'S FEES**

In a decision dated March 31, 2010 and order entered May 25, 2010, the Court (i) overruled the Debtor's objection to a $400,000 proof of claim filed by Karen Nason ("Nason") as trustee of the Krstic Irrevocable Trust for the benefit of Zillian Krstic (the "Trust") and (ii) gave Nason leave to file a request for attorney's fees, as provided in the Trust Agreement. Nason subsequently filed an application seeking attorney's fees of $127,245, comprised of $49,475 for her bankruptcy counsel, the Law Offices of Gabriel Del Virginia ("Del Virginia"), and $77,700 for Frank Miller ("Miller"), an attorney who represented Nason in various proceedings relating to the mortgage and consulted with the Del Virginia firm with respect to issues regarding the proof of claim.

The clause in the mortgage on which the claim for attorneys fees is based covers any action or proceeding "in which it becomes necessary to defend or uphold the lien created by this mortgage." Mortgage, ¶ 11.[1] This clause is broad enough to encompass the proceedings in this Court. The Debtor nevertheless opposes the request for fees on the following grounds.

1.    The Debtor first complains that Nason has not shown that she has actually expended cash for attorneys' fees by paying counsel. Nason and her attorneys respond

---

[1] The clause in question also provides that Nason is entitled to "all sums paid by the mortgagee for the expenses of any litigation to prosecute or defend the rights and lien created by this mortgage (including reasonable counsel fees)."

1

with the contention, which has not been disputed, that Nason does not have sufficient funds to make any payments in advance of receiving a distribution from the Trust. Since the distribution has been held up by continuing litigation and an appeal filed by the Debtor, Nason's point is valid and it is also consistent with New York law. *Mid-Hudson Catskill Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 180, n.7 (2nd Cir. 2005).

2.  The Debtor next contends that the fees requested by Del Virginia are not supported by original billing records and sufficient detail to comply with Local Rule 2016-1 and the Guidelines in the Court's General Order M-389 relating to fee applications. As Nason submits, however, these requirements are for professionals retained by and paid out of a bankruptcy estate, which is not the case here. Nason is also correct that lawyers are entitled in appropriate circumstances to extract from billing records and redact certain information. *See In re Franklin Indus. Complex Inc.*, 2008 WL 4845902 (Bankr. N.D.N.Y. 2008).

3.  On the other hand, billing records must provide sufficient detail and support for the fees claimed. The Del Virginia firm seeks fees for three time periods. The first runs from September 16, 2008 to February 27, 2009 and relates to the defense of an adversary proceeding against Nason in which she counterclaimed, as well as to the drafting of a property proof of claim in September 2009. The adversary proceeding and all claims and counterclaims were dismissed on or about March 24, 2009. The Debtor asserts that the dismissal of the counterclaims demonstrates that Nason was unsuccessful in this proceeding. However, as the Court noted at the time and in a decision dated March 31, 2010, the dismissal of Nason's principal counterclaim was expressly without

prejudice to Nason's rights, which were later vindicated. Based on the papers filed in the earlier proceeding and their utility in the later steps of the litigation, the Court finds reasonable the request for 187.2 hours at $150 per hour or $28,080 and 10.3 hours at $350 per hour or $3,605.00, or a total of $31,685.

4. The second period of representation apparently commenced with an agreement between Nason and the Del Virgina firm, dated December 3, 2009, which provided that the firm would receive $15,000 for the Del Virginia firm to represent Nason with respect to the "Property Proof of Claim." The written agreement stated that this amount "is in addition to any other amount" the firm was owed for prior representation. The Debtor does not claim that the fee sought for this work, $15,000, is unreasonable.[2] However, in addition to $15,000 for work on the property proof of claim subsequent to the signing of the contingency agreement, the Del Virgina firm seeks 18.6 hours subsequent to March 10, 2010 for objecting to the fee application of Debtor's counsel and for preparing its own fee application. It is doubtful that this work was within the attorneys' fee clause of the mortgage or constituted the "defense" of the mortgage; in any event, it was encompassed within the contingency agreement and is not separately compensable. Nason has established entitlement to reasonable fees of $31,685 for the prior period and $15,000 for the subsequent period, or $46,685 in total.

5. In addition to the Del Virginia firm, Nason also seeks $77,700 for services performed by Miller. According to a retainer agreement dated September 12, 2006, Nason retained Miller in connection with a partition action and a mortgage foreclosure pending in State Supreme Court as well as "any other such matters requested by the

---

[2] Moreover, to the extent required under State Law, the letter dated December 3, 2009, constitutes a retention agreement covering both the prior work, which is ratified, and subsequent work.

3

[c]lient." It is asserted that the subsequent representation in the adversary proceeding in this Court was such a matter, and it appears that Miller initially associated the Del Virginia firm as bankruptcy counsel and that he closely consulted with the firm subsequently.

The billing detail produced by the Miller firm is sufficient to support his application for the period through December 1, 2009, and his rate of $350 per hour appears reasonable and has not been separately attacked. The Debtor claims that Miller's work was wholly duplicative of that performed by the Del Virginia firm. Although the attorneys in the Del Virginia firm provided Nason with excellent representation, the record indicates that Miller played an appropriate advisory role and that the aggregate hourly rate of counsel and consulting counsel was reasonable. Moreover, Debtor's counsel was aware of Miller's involvement. Miller's time should not be disallowed in total as duplicative; however, since there was inevitably some overlap, the Court will reduce Miller's claimed fee of $64,505 for the period through December 1, 2009 by $20,000.

On the other hand, there is no support in the record for the proposition that Nason intended to pay Miller for his involvement in the work of the Del Virginia firm that the latter firm took on a contingency basis. There was no evidence adduced that Nason believed she would be liable to Miller, who was consulting with the Del Virginia firm, when she had limited her liability to Del Virginia to $15,000 on a contingency. Miller's request for fees of $13,265 after the date of the contingency agreement is therefore disallowed. Otherwise, Nason has adequately supported recovery of Miller's fees in the

4

amount of $64,505 representing 184.3 hours at $350 per hour, less $20,000, or a net of $44,505.

6.      Based on the entire record, Nason is awarded fees of $91,190 representing $46,685 for the Del Virginia firm and $44,505 for the Miller firm. The aggregate amount is reasonable considering the hours expended, results achieved, rates charged and quality of advocacy. *See Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir. 1974). This award is payable as part of Nason's property proof of claim; however, in light of the fact that the claim of another creditor, Carlton Capital Corp., has not been liquidated, it would be premature to make any payment now. No amounts shall be paid until further Court order, and all funds on deposit shall continue to be held in escrow.

IT IS SO ORDERED.

Dated: New York, New York
       August 20, 2010

                                            */s/ Allan L. Gropper*
                                            UNITED STATES BANKRUPTCY JUDGE