| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | NOT FOR PUBLICATION |
| ------------------------------------------------------------x<br>In re:<br><br>114 TENTH AVENUE ASSOC., INC.,<br><br>                                     Debtor.<br>------------------------------------------------------------x | Chapter 11<br><br>Case No. 05-60099 (ALG) |

## MEMORANDUM OF OPINION

A P P E A R A N C E S:

SCHAFFERMAN & FELDMAN, LLP
*Counsel for the Debtor*
     By: Joel M. Schafferman, Esq.
350 Fifth Avenue, Suite 2723
New York, New York 10118

MARK S. FREY ESQ.
*Special Counsel for the Debtor*
119 Fifth Avenue
New York, New York 10003

THE LAW OFFICES OF GABRIEL DEL VIRGINIA
*Counsel for Karen Nason*
     By: Gabriel Del Virginia, Esq.
488 Madison Avenue, 19th Floor
New York, New York 10022

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

       Before the Court is a demand for interest filed by Karen Nason, as the trustee of the Zillian Krstic Trust (the "Trust"). Nason's claim against the estate (the "Nason Claim") was allowed in the amount of $400,000 plus attorney's fees in an earlier decision of this Court, affirmed in an opinion of the District Court. *In re 114 Tenth Ave. Assoc., Inc.*, 427 B.R. 283 (Bankr. S.D.N.Y. 2010), *aff'd* 441 B.R. 416 (S.D.N.Y. 2010).

1

Attorney's fees were later awarded in the amount of $91,190. *In re 114 Tenth Ave. Assoc., Inc.*, 2010 WL 3304294 (Bankr. S.D.N.Y. Aug. 20, 2010).

Reference is made to the foregoing decisions for a full description of the nature and circumstances of the underlying dispute. In brief, the Nason Claim is based on a mortgage ("Mortgage") executed in favor of the Zillian Krstic Trust on November 24th, 2004. The property subject to the Mortgage was foreclosed upon for nonpayment of taxes and the successful bidder at an auction on May 18, 2005 was Carlton Capital Corp. or an affiliate ("Carlton"). The Debtor challenged the foreclosure as invalid due to defective notice and filed this chapter 11 case to pursue judicial relief from the foreclosure. All such efforts were ultimately unsuccessful, the foreclosure sale closed on March 25, 2009, and Carlton deposited the sale proceeds of $1,934,048.90 with the Clerk of the New York State Supreme Court, New York County. Those funds were later transferred to the New York City Commissioner of Finance and then to an escrow account under the control of the Debtor's counsel, pursuant to a stipulation approved by this Court on September 4, 2009.

The Court directed the parties in an endorsed letter on September 20, 2010 to settle an order providing for immediate payment to Nason of all amounts due on her claim, but the parties were unable to agree on the issue of interest, if any. A further order of this Court on December 23, 2010 directed the immediate distribution to Nason of the principal of the claim and attorney's fees in an amount totaling $491,190, reserving the issue of applicable interest rates for further briefing. It appears that payment was made at that time.

The terms of the Mortgage provided that it secures "indebtedness in the sum of Four Hundred Thousand ($400,000) dollars . . . to be paid without interest at such time as the mortgaged premises shall be sold." The only further reference to interest in the Mortgage is found in covenant 11, which provides for attorney's fees "together with interest thereon at the rate of six per cent per annum . . . ." Notwithstanding the failure of the Mortgage to provide for interest on the principal indebtedness, Nason argues that interest is due under New York CPLR 5001(a) from the date of the foreclosure sale in 2005 at the statutory pre-judgment rate of 9% as compensation for the Debtor's alleged breach of a contractual obligation to Nason – the breach allegedly consisting of the delay in the closing of the tax foreclosure sale and distribution of the proceeds of the sale.

For the reasons set forth below, Nason's request for interest at the 9% statutory rate is denied, and interest is awarded only in the amount set forth below.

## DISCUSSION

Nason argues that interest is due from the date of the foreclosure sale in 2005, relying on CPLR 5001(a), which provides:

> Interest shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property, except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion.

Under CPLR 5001(a), if an award of interest is required, then the applicable rate under CPLR 5004 is 9% unless otherwise specified in the statute. However, as also provided in CPLR 5001(a), where the underlying action is of an equitable nature, the court is directed to exercise discretion regarding the rate and the date from which interest is computed.

3

The Debtor asserts that even if interest is ordinarily payable under CPLR 5001(a), an action seeking distribution of foreclosure sale proceeds is of an equitable nature, making an award of interest discretionary. The Debtor points out that by the terms of the Mortgage, the indebtedness of $400,000 did not become due and payable until the property was sold and the sale closed, as the Mortgage specifically provided that the amount it secures is to be "payable without interest." The Debtor further urges the Court not to make a discretionary award because the Debtor did not have any right to the funds until the foreclosure sale closed, in that the Debtor was attempting to vacate the sale before that date. The Debtor also contends that Nason's demand is an unsecured claim in this bankruptcy case, not entitled to interest, and that Nason failed to make a timely request for interest in her proof of claim.

Considering first the Debtor's contention that the Court has discretion with respect to an award of interest because the underlying action is of an equitable nature, it is clear that an action for foreclosure is equitable in nature. *Notey v. Darien Const. Corp.*, 41 N.Y.2d 1055, 364 N.E.2d 833, 396 N.Y.S.2d 169 (1977). Therefore, the Court has discretion in connection with both an award of interest and the rate. Although Nason would measure interest from the foreclosure sale in 2005, the sale did not close and there were no proceeds paid until 2009. *Prima facie*, interest should not accrue before proceeds of the sale were available for distribution.

The Second Circuit has indicated that the following factors are relevant when considering whether to exercise discretion and award prejudgment interest: "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute

4

involved, and/or (iv) such other general principles as are deemed relevant by the court." *Wickham Contracting Co., Inc. v. Local Union No. 3, Int'l Bd. of Elec. Workers, AFL-CIO,* 955 F.2d 831, 833-34 (2d Cir.1992). Consideration of these principles leads to the conclusion that the date on which the foreclosure sale closed and the proceeds were available for distribution is the earliest date from which interest is payable.

Nason argues that an award of interest at the statutory rate is mandatory under CPLR 5001(a) because the Debtor's objection to her proof of claim was an "attempt to avoid paying the Mortgage and, as such, a breach of its contractual duties" and "[a]bsent this bankruptcy proceeding, Nason would have been required to assert her claim for breach of Mortgage . . . ." In the alternative, Nason urges the Court to award interest in its discretion because Debtor was at fault in delaying the closing and depriving her of the proceeds.

Nason's assertion that the Debtor's objection to her proof of claim constituted a constructive breach of a contractual obligation is unfounded. The Debtor's position was not frivolous, and there was no finding that it was taken in bad faith. Nason relies on *In re Kovler*, 253 B.R. 592 (Bankr. S.D.N.Y. 2000), for the proposition that failure to pay the proceeds of a sale constitutes a breach of a contractual obligation, but *Kovler* is distinguishable. There, an attorney was found guilty of a breach of the New York Judiciary Law by failing to turn over money that he received on behalf of his client, and the breach of the attorney-client relationship also gave rise to a cause of action for breach of contract. In contrast, the Debtor's challenges to Nason's claim in the bankruptcy case were well within its legal rights and not a breach of any contractual duty.

Nason also cites New York cases to support an argument that prejudgment interest should be awarded because the Debtor was at fault for delaying a foreclosure proceeding. *See, e.g., Bardi v. Morgan*, 17 Misc.3d 927, 847 N.Y.S.2d 854 (Sup. Ct. Kings Co. 2007) (mortgagor entitled to interest after purchaser's delay and failure to seek an adjournment of closing); *see also NYCTL 1996-1 Trust v. EM-ESS Petroleum Corp.*, 57 A.D.3d 304, 869 N.Y.S.2d 71 (1st Dep't. 2008) (purchaser partially at fault for foreclosure delay). These cases do not support the proposition that Nason is attempting to advance. Nason was neither the purchaser nor seller, and she did not commence the foreclosure proceedings. The Debtor's pursuit of its rights to relief from the foreclosure do not give rise to a claim by Nason for breach of any duty to Nason or as to which she could be considered a third-party beneficiary. *See Mfr's & Traders Trust Co. v. Reliance Ins. Co.*, 8 N.Y.3d 583, 870 N.E.2d 124, 838 N.Y.S.2d 806 (2007), where the Court of Appeals held that an unsuccessful claimant in an interpleader action will not be charged statutory interest under CPLR 5001 where the funds in dispute were not held in an interest-bearing account and none of the interested parties had use of the sale proceeds during the period of litigation.

Nason argues that *Mfr's & Traders Trust* does not apply here because the losing party in that case was not ordered to pay anything to the other party and because in this case the Debtor's continued possession of the real property during the pendency of the appeals and use of the sales surplus as a bond to support its appellate remedies negate the Debtor's lack of possession of the sale proceeds. Nason's arguments regarding the period prior to the closing of the foreclosure sale fail because the Debtor's pursuit of relief from the foreclosure did not unduly delay the foreclosure under New York law. In *Mfr's &*

6

*Traders Trust*, the Court held that there was no interference with the "possession or enjoyment" of property where claimants to an interpleader fund pursued good faith litigation of their claims. By contrast, the purchaser in *Bardi*, for example, had defaulted on the terms of sale by not appearing at a foreclosure hearing. Despite the lengthy litigation engaged in by the Debtor, the pursuit of its legal remedies, whether successful or not, did not interfere with any right that Nason had to "possession or enjoyment" of property.

This conclusion is supported by the fact that the amount secured by the Trust's Mortgage was not due and payable until the property was sold, and the Debtor was under no obligation to Nason to sell the property. Absent the foreclosure, a sale at some time in the future would have entitled the Trust to no more than the $400,000 specified in the Mortgage, and until the foreclosure sale was finalized and the constructive lien created by the Mortgage attached to the proceeds of the sale, Nason was not deprived of any interest in property.

After the closing of the foreclosure sale on March 25, 2009, the facts and the equities changed, and Nason also became entitled to a cause of action under N.Y. RPAPL 1354 for distribution of surplus funds. Moreover, from that point in time the funds were apparently held in interest bearing accounts, again changing the equities. As the Court also indicated in *Mfr's & Traders Trust*, interest can be allowed to the extent of the actual accrual of interest on deposited funds prior to disbursement. *See Mfr's & Traders Trust*, 8 N.Y.3d at 589-90.

As noted above, the Debtor also contended that Nason's claim is merely a claim in a bankruptcy case, and as such is not entitled to interest. Even if Nason's claim was an

7

unsecured claim, there is no dispute that the estate is solvent, and unsecured creditors of a solvent estate ordinarily have an entitlement to interest in accordance with equity and non-bankruptcy legal principles. *Vanston Bondholders Protective Comm. v. Green,* 329 U.S. 156 (1946).[1] In any event, the Mortgage created a lien which attached to the surplus proceeds of the foreclosure sale, and therefore the Nason Claim can be considered a secured claim under § 506(a)(1) of the Bankruptcy Code.[2] There is no dispute that the sale surplus proceeds far exceed the amount of Nason's claim and all other claims against the estate. Post-petition interest would therefore be payable on Nason's claim under § 506(b) of the Bankruptcy Code.

## CONCLUSION

Based on the above, the Court awards post-petition interest on the $400,000 principal amount of the Nason Claim from March 25, 2009 through December 23, 2010, at the interest rate earned on the sale surplus proceeds while being held in escrow. With respect to the attorney's fee award of $91,190.00, there is a 6% rate specified in the mortgage as interest on attorney's fees. However, it is not contested that Nason did not pay her attorneys and thereafter seek reimbursement therefor. In a bankruptcy case, interest on attorney's fees ordinarily accrues when the fees are awarded. *Cf. In re Glados, Inc.*, 83 F.3d 1360 (11th Cir. 1996). Nason's attorney's fees were paid on or about the day they were awarded. In sum, it would appear that there is no basis for any award of interest on attorney's fees.

---

[1] The principles relevant in *Vanston* also make it clear that interest may be payable whether or not demanded in a proof of claim.

[2] It is not determinative that Nason's secured claim was unperfected. See the Court's prior decision, 427 B.R. at 293, n. 6.

The parties are directed to confer on the calculation of interest.  If agreement cannot be reached, Nason may settle an order for payment of interest on three days' notice.

Dated:   New York, New York
         March 25, 2011                  */s/ Allan L. Gropper*
                                         UNITED STATES BANKRUPTCY JUDGE